**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Sao, | No. CV-19-05261-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Pro-Tech Products Incorporated, *et al.*, | |
| Defendants. | |

At issue is Plaintiff James Sao's Motion for Judgment on the Pleadings (Doc. 11), to which Defendants filed a Response (Doc. 14) and Plaintiff filed a Reply (Doc. 15). The Court resolves the Motion without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Plaintiff's Motion in part and denies it in part.

**I.     BACKGROUND**

Defendant Pro-Tech Products, Inc. ("Pro-Tech") produces residential and commercial roofing systems. (Doc. 2, Answer ¶ 36.) Defendant Randall Winter is a director and officer of Pro-Tech. (Answer ¶ 19.) Plaintiff worked for Pro-Tech for one week, from August 12–16, 2019. (Doc 1, Compl. ¶ 9; Answer ¶¶ 9, 37.) Defendants allege that, although Plaintiff "began employment as a laborer with . . . Pro-Tech," the week consisted solely of training, of which Plaintiff was the primary beneficiary. (Answer ¶¶ 37–38.)

After one week, "Plaintiff decided the job was not for him" and did not return to work for Pro-Tech. (Compl. ¶ 40.) Plaintiff did not receive wages on the next regular payday. (Answer ¶ 44.) When Plaintiff addressed the non-payment with Defendants, they

informed Plaintiff that he had executed an Employment Contract, wherein he "voluntarily agreed" that if he left the job within 90 days of his start date, he would forfeit one week's pay due to the "expense and time consumption of training new employees." (Answer ¶ 45.)

Plaintiff's attorneys then sent Defendants a demand letter. (Answer ¶ 46.) On September 16, Defendants delivered a check to Plaintiff's attorneys in the "full amount of wages due to Plaintiff" less withholdings. (Answer ¶ 47.) Two days later, Plaintiff's counsel informed Defendants' counsel that Plaintiff had rejected the check. (Compl. ¶ 48; Answer ¶ 48.)

Plaintiff alleges three claims against Defendants: (1) failure to pay minimum wages in violation of the Federal Labor Standards Act (FLSA), 29 U.S.C. § 206; (2) failure to pay minimum wages in violation of the Arizona Minimum Wage Statute (AMWS), A.R.S. § 23-364(g); and (3) failure to timely pay wages under the Arizona Wage Statute (AWS), A.R.S. § 23-353. Defendants raise multiple affirmative defenses in their Answer, including lack of subject matter jurisdiction due to mootness of Plaintiff's claims; failure to state a claim for the same reason; satisfaction; good faith; the right of setoff; and waiver and consent. Plaintiff now moves for judgment on the pleadings on all counts, arguing that Defendants admitted each element of each claim and that none of Defendants' alleged affirmative defenses apply.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial." The legal standards governing Rules 12(c) and 12(b)(6) are "functionally identical," as both permit challenges directed at the legal sufficiency of the other party's allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). A judgment on the pleadings is proper only when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. *Gen. Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). Stated another way, a motion for judgment on the pleadings will not be granted

unless it appears "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 529 (9th Cir. 1997).

In assessing a motion for judgment on the pleadings, all allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party. *Seventh–Day Adventists*, 887 F.2d at 230. "As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* A plaintiff's uncontested allegations, to which the defendant had an opportunity to respond, are also taken as true. *United States v. Brown*, No. CV-18-04213-PHX-DLR, 2019 WL 5549174, at *2 (D. Ariz. Oct. 28, 2019). Finally, a plaintiff's motion for judgment on the pleadings may be granted only if all defenses raised in the answer are legally insufficient. *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002).

### III. ANALYSIS

#### A. FLSA Claim

The FLSA provides that "[e]very employer shall pay to each of his [covered] employees" a minimum wage. 29 U.S.C. § 206(a). An employer who violates this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). When assessing liquidated damages, "[d]ouble damages are the norm." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003).

To prevail on his FLSA claim, Plaintiff must prove that (1) he was employed by Defendants during the relevant period; (2) he was a covered employee; and (3) Defendants failed to pay him a minimum wage. *Quinonez v. Reliable Auto Glass, LLC*, No. CV-12-000452-PHX-GMS, 2012 WL 2848426, at *2 (D. Ariz. July 11, 2012); *see also Zorich v. Long Beach Fire Dept. & Ambulance Serv., Inc.*, 118 F.3d 682, 684 (9th Cir. 1997). Plaintiff argues Defendants admitted factual allegations in the Answer that prove all three elements.

### 1. Employer-Employee Relationship

First, Plaintiff asserts that both Pro-Tech and Winter were Plaintiff's employers within the meaning of the FLSA. "Courts have adopted an expansive interpretation of the definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Real v. Driscoll Strawberry* Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979). An employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer," and to employ means to "suffer or permit to work." 29 U.S.C. § 203(e), (g). Whether a party is an employer within the meaning of the FLSA is a question of law. *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

The Answer admits the following factual allegations:

- Plaintiff "was a full-time employee of Defendants" for the week of August 12–19, 2019;

- Plaintiff was an employee of Defendants as defined by the FLSA, the AMWS, and the AWS;

- Pro-Tech was Plaintiff's employer as defined by the FLSA, the AMWS; and the AWS;

- "Pro-Tech Products employed Plaintiff;"

- Plaintiff "began employment as a laborer with Defendant Pro-Tech . . . on August 12, 2019."

(Answer ¶¶ 9–12, 14–16, 20, 37.)

To all these allegations however, Defendants added "the clarification that Plaintiff was a trainee and the primary beneficiary of the first week training." (Answer ¶¶ 9–12.) While the Response fails to develop this argument or even contest Plaintiff's argument that Defendants were his employers, the Court will evaluate Defendants' claim that Plaintiff was a trainee and the primary beneficiary of the training week.

The employee-trainee distinction was first articulated in *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). The Court held that railroad workers who received

"practical training" to become yard brakemen were not employees under the FLSA. The railroad company provided the workers instruction and a certificate at the end of the training period, which qualified the workers to earn compensation for future work. The Court likened the railroad's instruction to that which a school or vocational setting would provide, where it "could not reasonably be suggested [the workers] were employees of the school within the meaning of the Act." *Walling*, 330 U.S. at 152.

Conversely, the Court noted that, "[w]ithout doubt the Act covers trainees, beginners, apprentices, or learners if they are employed to work for an employer for compensation." *Id.* The Ninth Circuit also holds that a worker is an employee under the FLSA if there was a bargained-for compensation. *See Benjamin v. B & H Edu., Inc.*, 877 F.3d 1139, 1148 (9th Cir. 2017) (finding cosmetology students not employees because, among other reasons, they expected no renumeration throughout their training and received none); *see also Hale v. State of Ariz.*, 993 F.2d 1387, 1395 (9th Cir. 1993).

Here, Plaintiff was employed by Pro-Tech to work for compensation, and such compensation was bargained for. Plaintiff signed an Employment Contract, effective August 12, 2019, which set his hourly rate at $13.00. (Answer ¶ 39, 45.) Thus, to the extent Defendants attempt to raise a factual dispute that Plaintiff was a trainee rather than an employee, these statements are nothing more than legal conclusions couched as factual allegations, which the Court is not bound to accept as true. *See Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Further, Defendants make numerous admissions—as detailed above—that Pro-Tech was Plaintiff's employer. Accordingly, the Court finds as a matter of law that Pro-Tech was Plaintiff's employer for the week of August 12–16, 2019.

The same cannot be said of Winter. Courts utilize an "economic reality" test, rather than reliance on technical concepts, in determining whether an individual is an employer. *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). Central to the analysis is whether an individual exercises control over the nature and structure of the employment relationship. *See Dyrhaug v. Tax Breaks Inc.*, No. CV-13-01309-PHX-BSB, 2015 WL 13567067, at *12 (D. Ariz. Sept. 15, 2015). This considers factors such as whether the

individual has the power to hire and fire employees, supervises and controls employee work schedules, determines the rate and method of payment, and maintains employment records. *Benjamin*, 877 F.3d at 1145.

While Defendants admit Winter is a director and officer of Pro-Tech, has an ownership interest in Pro-Tech, and oversees its *general* method of paying wages and its company procedures (Answer ¶¶ 19, 26–27), these admissions do not speak to Winter's control over *Plaintiff's* employment specifically. In fact, Defendants deny that Winter exercised authority over hiring Plaintiff, determining his rate of pay, or maintaining his work schedule or employment records. (Answer ¶¶ 24–27.) *See Dyrhaug*, 2015 WL 13567067, at *15 ("Plaintiffs do not address whether Allen individually supervised and controlled Plaintiffs' work schedules and employment conditions. Plaintiffs' motion for summary judgment also does not address whether Allen personally determined rates of pay for Plaintiffs or personally maintained employment records for [Plaintiffs]. Therefore, these factors do not support a finding that Allen was an employer under the FLSA.").

The Court must accept Defendants' factual allegations as true and construe them in the light most favorable to Winter. As this time, the Court is unable to conclude as a matter of law that Winter was Plaintiff's employer under the FLSA.

### 2. Covered Employee

Plaintiff must prove that he was a "covered" employee under the FLSA. This requires that the employee be "engaged in commerce or in the production of goods for commerce, or . . . employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The Act defines an enterprise to include, *inter alia*, "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1).

The Court determined above that Plaintiff was employed by Pro-Tech. Defendants admit that Plaintiff, "in his work for Defendants," was "engaged in commerce or the production of goods for commerce," "was engaged in interstate commerce," and "regularly handled goods produced and transported in interstate commerce." (Compl. ¶¶ 33–35;

Answer ¶¶ 33–35.)[1] Defendants further admit that "Pro-Tech Products, Inc. is an employer engaged in commerce with [an] annual gross sales [not less than $500,000.]" (Compl. ¶ 32; Answer ¶ 32.) The Court therefore finds as a matter of law that Plaintiff is an employee covered under the FLSA.

### 3. Failure to Pay Minimum Wage

Finally, Plaintiff must demonstrate that Defendants failed to pay him minimum wages for his work performed during the week of August 12–16. Although the Act says nothing about *when* minimum wages must be paid, the Ninth Circuit has read a timeliness requirement into the FLSA. "[U]nder the FLSA wages are 'unpaid' unless they are paid on the employees' regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1538 (9th Cir. 1993) (holding the State of California violated the FLSA when it paid its highway maintenance workers 14–15 days late due to lack of funds in the state budget). "[P]ayment must be made on payday, and . . . a late payment immediately becomes a violation equivalent to non-payment." *Rother v. Lupenko*, 515 F. App'x 672, 675 (9th Cir. 2013) (citing *Biggs*, 1 F.3d at 1554).

Here, Defendants admit Plaintiff "did not receive his owed wages during the next regular payday." (Compl. ¶ 44; Answer ¶ 44.) "Paychecks are due on payday. After that, the minimum wage is 'unpaid.'" *Biggs*, 1 F.3d at 1554. The Court finds Plaintiff has established as a matter of law the third element of his FLSA claim against Pro-Tech. Unless Defendants raise a legally sufficient affirmative defense, Plaintiff is entitled to judgment on the pleadings on this claim.

### B. AMWS Claim

The AMWS mandates that employers "pay employees no less than the minimum wage, which shall be not less than . . . $11 on and after January 1, 2019." A.R.S. § 23-363(A)(3). An employer who fails to pay minimum wages is liable for the balance of the wages, including interest, and an additional amount equal to twice the unpaid wages. § 23-

---

[1] Defendants add the same clarification that Plaintiff was a trainee and the primary beneficiary of the first week of training. As explained above, the Court rejects this as an unsupported legal conclusion.

363(G). Defendants admit Pro-Tech was Plaintiff's employer as specifically defined in the AMWS, and that Plaintiff was Pro-Tech's employee under the same. (Answer ¶¶ 11, 15.)

Where Plaintiff's AMWS claim falls short in this early stage of litigation is in demonstrating as a matter of law that Pro-Tech *actually failed* to pay Plaintiff minimum wages under Arizona law. Defendants tendered a check for Plaintiff's full amount of wages on September 16, approximately one month after Plaintiff quit. As discussed above, the Ninth Circuit implies a timeliness requirement into the FLSA—something, the Court notes, it had to research and find on its own—such that late wages are unpaid wages. Plaintiff has presented no equivalent obligation under the AMWS, and the Court finds no cases mandating such. In fact, the Ninth Circuit in *Rother* held "there is no need for the courts to read a timeliness requirement into the [Oregon state] statute's minimum wage provision, or to treat late payment as non-payment" because Oregon had a separate statute explicitly mandating timely payment of wages. 515 F. App'x at 676. Arizona also has a separate statute explicitly mandating timely payment of wages: the Arizona Wage Statute.

At this time, the Court cannot conclude as a matter of law that Defendant's late payment of wages violates the AMWS. Accordingly, Plaintiff's motion for judgment on the pleadings is denied with respect to his AMWS claim.

## C. AWS Claim

Among other things, the AWS governs payment of wages to an employee who has been discharged or quits. "When an employee quits the service of an employer he shall be paid in the usual manner all wages due him no later than the regular payday for the pay period during which the termination occurred." A.R.S. § 23-353(B). If an employer violates this provision, "the employee may recover in a civil action against an employer. . . an amount that is treble the amount of the unpaid wages." A.R.S. § 23-355(A).

Again, Defendants admit Pro-Tech was Plaintiff's employer under the AWS and that it did not pay Plaintiff his wages on the next regular payday. (Answer ¶¶ 12, 16, 44.) Accordingly, unless an affirmative defense applies, Plaintiff is entitled to judgment on the pleadings and a potential award of treble damages.

### D. Affirmative Defenses

The existence of affirmative defenses often precludes judgment on the pleadings unless such affirmative defenses raise only questions of law. *See Seventh–Day Adventists*, 887 F.2d at 230. Thus, if Defendants' affirmative defenses create material issues of fact, judgment on the pleadings is inappropriate. *RLI Ins. Co. v. City of Visalia*, 297 F. Supp. 3d 1038, 1056 (E.D. Cal. 2018). Defendants raise the affirmative defenses of mootness, failure to state a claim, good faith, setoff, waiver, and consent.

#### 1. Mootness

Defendants argue that Plaintiff's claims are mooted by the fact that Defendants tendered Plaintiff's full amount of wages by check on September 16. Defendants cite to several cases in support, including *Rueling v. MOBIT LLC*, *Kouba v. Renzenberger*, and *Orozco v. Borenstein*, all cases from the District of Arizona.

In *Rueling*, the plaintiff sued for failure to pay three weeks' worth of wages, totaling $870 of minimum wages. No. CV-18-00568-PHX-BSB, 2018 WL 3159726, at *2 (D. Ariz. June 28, 2018). Liquidated damages under the FLSA brought her damages to $1,740. After the suit was filed, the defendant wired $5,000 to the plaintiff's bank account, and there was no evidence that the plaintiff returned the money. Finding the $5,000 exceeded the damages the plaintiff could recover on her FLSA claim, the court ruled the matter moot and dismissed for lack of subject matter jurisdiction. The plaintiff could "not establish that there is any additional relief the Court can provide on her FLSA claim." *Id.* at *5.[2]

Similarly, in *Kouba*, after the plaintiff sued, the defendant tendered his overtime wages and a separate check for statutory damages and interest. No. CV-10–159-TUC-FRZ, 2012 WL 7149410, at *2 (D. Ariz. Jul. 6, 2012). The court held that because the defendant had paid the maximum amount of damages the plaintiff could receive, his FLSA claim was moot. Finally, in *Orozco*, the court dismissed the FLSA putative class claims for lack of subject matter jurisdiction when the employer reimbursed all putative class members for

---

[2] The plaintiff had also brought a claim under the AWS for failure to timely pay wages, but the court held it could not exercise supplemental jurisdiction over the claim once the FLSA claim was dismissed.

allegedly improper deductions, plus liquidated damages. No. CV-11-2305-PHX-FJM, 2012 WL 3762408, at *3 (D. Ariz. Aug. 29, 2012).

*Rueling*, *Kouba*, and *Orozco* all contain a crucial factual distinction that makes Defendants' reliance on them—and their mootness argument entirely—incorrect as a matter of law. All three cases lacked a live case or controversy because the plaintiffs "had been fully compensated for *all possible damages*." *Kouba*, 2018 WL 3159726, at *3 (emphasis added). That included liquidated damages and, if applicable, treble damages. Here, Defendants tendered only Plaintiff's wages. Thus, even after Plaintiff received the check (which he rejected, unlike the other plaintiffs), he still had an actual case or controversy to bring before the Court: an action to recover unpaid liquidated damages, treble damages, and interest.[3]

Defendants' attempt to create significance of the fact that they sent the wages *before* the suit must be rejected for similar reasons. An FLSA cause of action accrues at the payday immediately following the work period for which compensation is owed. *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007). Likewise, an action under the AWS accrues upon an employer's failure to pay a discharged employee's wages on the next regular payday. *See* A.R.S. § 23-353. The moment Pro-Tech failed to pay Plaintiff on the next payday triggered his eligibility to sue for wages, liquidated damages, and treble damages under the FLSA and AWS. The fact that Pro-Tech sent Plaintiff *only his wages* prior to litigation did not obliterate his legal right to seek additional damages.

Finally, without providing any citation or legal support, Defendants argue that Plaintiff's rejection of the check is "immaterial and of no consequence under the FLSA." (Resp. at 9.) However, "[w]hen a plaintiff rejects an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—

---

[3] *See also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) ("[A] claim becomes moot once the plaintiff *actually receives* all of the relief to which he or she is entitled on the claim.") (emphasis in original); *Martinez v. PM&M Elec. Inc.*, No. CV-18-01181-PHX-JGZ, 2019 WL 450870, at *3 n.5 (D. Ariz. Feb. 5, 2019) (finding the check the defendant sent the plaintiff for his minimum wages "does not nullify" his FLSA claim, but that it could be credited against the plaintiff's total damages).

is a legal nullity, with no operative effect." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016). Although *Campbell-Ewald* dealt with Rule 68 offers of judgment, the reasoning applies here. A plaintiff can choose to accept or not accept a check, just as it can choose to accept or not accept a settlement offer under Rule 68 or otherwise. Plaintiff had no obligation to accept his wages as settlement when he had a claim for additional damages.

The Court accordingly finds that Defendants' affirmative defenses of mootness and lack of subject matter jurisdiction are insufficient as a matter of law.[4]

### 2. Good Faith & Setoff

#### a. FLSA Claim

Defendants raise a good faith affirmative defense under 29 U.S.C. § 260.[5] That section provides courts with discretion to deny an award of liquidated damages if the employer shows it acted in subjective "good faith" and had "objectively reasonable grounds" for believing its actions did not violate the FLSA. *Chao*, 346 F.3d at 920. Defendants allege Plaintiff signed an Employment Contract, wherein he agreed to "forfeit one week paycheck due to the expense and time consumption of training new employees." (Answer ¶ 45.) They argue this constituted a legitimate basis for withholding Plaintiff's wages, and that whether Defendants acted in good faith is a question of fact precluding judgment on the pleadings. Relatedly, Defendants contend Plaintiff breached his contractual obligation to offset training costs and that Defendants' right of setoff bars Plaintiff's claims.

Relying on the FLSA regulations, a court in this district recently rejected Defendants' exact argument. "Under the [FLSA] minimum wage provisions, if there are

---

[4] Defendants' affirmative defenses of satisfaction and failure to state a claim are also predicated on the fact that Pro-Tech sent Plaintiff his wages on September 16. They thus fail for the same reasons as the mootness argument.

[5] This is one of two good-faith defenses available under the FLSA. The other, § 259, excuses an employer's violation if it can prove it acted in conformity with and in reliance on a written administrative regulation, order, ruling, approval, or interpretation of the Wage and Hour Division of the U.S. Department of Labor. Because Defendants do not assert this defense in the Answer or argue it in the Response, the Court will not address it.

deductions by the employer which lower an employee's wages below the minimum wage for items not qualifying as board, lodging, or other facilities . . . they are unlawful." *Martinez*, 2019 WL 450870, at *3 (citing 29 C.F.R. § 531.36(b))[6].

In *Martinez*, the plaintiff sued after receiving a paycheck for $0 following termination of his employment. Although the defendant admitted in the answer all three elements of an FLSA claim, it raised defenses of good faith and setoff on the grounds that plaintiff had agreed in writing to: (1) partially reimburse defendant for tools over the course of several pay periods, and (2) if plaintiff left the job within 12 months, fully reimburse defendant or return the tools. *Id.* at *4. The plaintiff did neither. Yet, despite the existence of the written agreement to reimburse, the court rejected the defendant's § 260 good faith argument and granted the plaintiff judgment on the pleadings. *Id.* The tools were not "board, lodging, or other facilities" under the FLSA regulations. Deductions for them—the effect of which brought the plaintiff's wages below minimum wage—were therefore illegal. "Because [the defendant's] offset was illegal, the Court, as a matter of law, rejects [its] claim that it acted in good faith with reasonable grounds for believing" it was violating the FLSA. *Id.* at *3.

Similarly, "expense and time consumption to train new employees" are not "board, lodging, or other facilities" under the FLSA regulations. In the context of the good faith defense, the Ninth Circuit has stated "[i]t is not reasonable for an employer to remain ignorant of clear law." *Ackler v. Cowlitz Cty.*, 7 F. App'x 543, 544 (9th Cir. 2001) (finding the defendant lacked an objectively reasonable ground when it violated the statute's clear provision mandating overtime). Defendants' withholding of one week's pay, which has the effect of bringing wages below the minimum wage, was illegal—notwithstanding the Employment Contract Plaintiff signed.[7]

---

[6] That regulation provides: "Deductions for articles such as tools, miners' lamps, dynamite caps, and other items which do not constitute 'board, lodging, or other facilities' may likewise be made in nonovertime workweeks if the employee nevertheless received the required minimum wage in cash free and clear; but to the extent that they reduce the wages of the employee in any such workweek below the minimum required by the Act, they are illegal." 29 C.F.R. § 531.36(b)

[7] Defendants' defenses of waiver, consent, and unclean hands fail for this reason.

Accordingly, Defendants lack an objectively reasonable ground for failing to comply with the FLSA's minimum wage requirements, and its affirmative defenses of setoff and good faith are insufficient to survive judgment on the pleadings on Plaintiff's FLSA claim.

### b. AWS Claim

Under the AWS, an employer shall not divert an employee's wages *unless* (1) the employer is required or empowered to do so by law; (2) "the employer has prior written authorization from the employee" or (3) "there is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee." A.R.S. § 23-352. Defendants argue the second and third exceptions provided a good faith basis for withholding Plaintiff's wages.

Plaintiff did not address in the Motion why these AWS exceptions are inapplicable. Nor did he do so in the Reply, even after Defendants briefed the issue. Plaintiff instead hangs his hat on *Martinez*, which discussed the good faith defense only in the context of the FLSA and the AMWS—not the AWS. The FLSA and the AWS are separate statutory regimes with different mandates, prohibitions, and remedies. Indeed, the *Martinez* decision was based on an interpretation of an FLSA regulation; to the Court's knowledge, no such regulation exists within the AWS framework.

The Court, compelled again to do its own research on the topic, found no case law in the context of the AWS that addressed a scenario where a plaintiff, in writing, authorizes forfeiture of a paycheck upon the triggering of a particular condition. If anything, the court in one case seemed willing to consider application of § 23-352's second exception, but for the fact that the employee in that case allegedly *orally* consented to withholding of wages. *See Dalos v. Novaheadinc*, No. 1 CA-CV 07-0459, 2008 WL 4182996, at *7 (Ariz. Ct. App. Mar. 18, 2008).

Without more thorough argument, the Court is unable to conclude at this time that Defendants' affirmative defenses of setoff and good faith under § 23-352 are legally

insufficient. The Court accordingly denies Plaintiff's motion for judgment on the pleadings with respect to his AWS claim.

### E. Damages

Plaintiff is entitled to judgment on the pleadings against Pro-Tech on his FLSA claim. The minimum wages owed are $290 (40 hours * $7.25/hour).[8] Liquidated damages are mandatory unless the employer establishes both subjective and objective good faith in its violation of the FLSA. 29 U.S.C. § 216(b); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison*, 83 F.3d 292, 297–98 (9th Cir. 1996). The Court determined above that Pro-Tech's ignorance of the law proscribing withholdings for anything other than board or facilities—if the effect of those withholdings brings wages below the minimum wage—is not objectively reasonable. Liquidated damages are therefore mandatory, and double damages are the norm. *Chao*, 346 F.3d at 920. Accordingly, Plaintiff is entitled to $580 in damages on his FLSA claim against Pro-Tech. The Court is also required to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

However, because the Court denies Plaintiff judgment on the pleadings on his AMWS claim, AWS claim, and all claims against Winter, those claims will not be resolved until later stages of litigation. They also represent a range of potential damage awards. As Plaintiff states, he would not be entitled to both liquidated and treble damages, just the higher of the two. (Mot. at 12.) Therefore, the Court must defer an award of Plaintiff's FLSA damages until the other claims are resolved. If Plaintiff later prevails on his remaining claims, the damage calculation must factor in the FLSA damages above.

---

[8] The Court determines the 40 hours from the pleadings and the parties' briefs. Defendants allege that Plaintiff worked for Defendant for one week, and that he was a "full-time" employee during that week. (Compl. ¶ 9; Answer ¶ 9.) Defendants sent a check for his "full amount of wages, less the required withholdings," for that week in the amount of $517.16. (Answer at 7 ¶ 2.) They assert they paid him $14/hour rather than the contracted for rate of $13/hour. Working backward, the check Defendants sent was for 40 hours of work. Because Defendants did not contest the number of hours in the Response, the Court finds no material dispute of fact in regard to how many hours Plaintiff worked. The $7.25 rate is set forth in 29 U.S.C. § 206(a)(1).

### F. Leave to Amend

Defendants request this Court grant leave to amend the Answer rather than grant Plaintiff judgment on the pleadings. As the Court only grants Plaintiff's Motion as to one claim against one Defendant, it will address Defendants' request only as to Plaintiff's FLSA claim against Pro-Tech. The Court finds that an amendment to the Answer would be futile. Defendants admit Pro-Tech failed to pay Plaintiff, a covered employee, his minimum wages in the time period required. No additional allegations or affirmative defenses could negate these facts or raise a material factual dispute about them. Defendants' request is therefore denied.

Finally, the Court observes that it expended many hours and 15 pages of writing to dispose of a single claim, against a single Defendant, on an early-stage motion that is typically conservatively filed. In large measure, the amount of time the Court devoted was due to cursory and inadequate briefing. Should the parties bring such a motion in future cases, the Court expects them to in fact provide the law and develop their arguments to enable efficient adjudication.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiff's Motion for Judgment on the Pleadings (Doc. 11). The Court grants the Motion with respect to Plaintiff's FLSA claim against Defendant Pro-Tech and denies it for all remaining claims against Pro-Tech and all claims against Defendant Winter.

**IT IS FURTHER ORDERED** denying Defendants' request for leave to amend the Answer (Doc. 14).

Dated this 19th day of December, 2019.

Honorable John J. Tuchi
United States District Judge